IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JEREMY JAY LOVELADY,

    Plaintiff,

v.

DR. BEAMER, MS. WETTLAUGHER,
and MS. GARTON,

    Defendants.

2:16-CV-1614-PK

OPINION AND
ORDER

PAPAK, Magistrate Judge:

Incarcerated plaintiff *pro se* Jeremy Ray Lovelady filed this action against defendants Dr. Beamer (identified by defendants as Leland Beamer), Ms. Wettlaugher (identified by defendants as Dorothy Wettlaufer and referred to herein as "Wettlaufer")), and Ms. Garton (identified by defendants as Jaylene Garton) on August 9, 2016. By and through his complaint, Lovelady alleged all defendants' liability under 42 U.S.C. § 1983 for the violation of his Eighth Amendment right to freedom from cruel and unusual punishment in connection with defendants' provision of health care to him while he was incarcerated at the Eastern Oregon Correctional Institution ("EOCI"), and Beamer's liability under Oregon law for negligence in connection with Beamer's provision of health care to him while he was incarcerated at EOCI. This court has

federal-question jurisdiction over Lovelady's Section 1983 claims pursuant to 28 U.S.C. § 1331, and may properly exercise supplemental jurisdiction over Lovelady's negligence claim pursuant to 28 U.S.C. § 1367.

On May 17, 2017, I granted summary judgment in defendants' favor as to Lovelady's Section 1983 claims against Beamer and Wettlaufer due to Lovelady's failure to exhaust administrative remedies in connection with those claims as required under the Prison Litigation Reform Act, which failure deprived this court of jurisdiction to consider those claims as a matter of law. By and through the same Opinion and Order, I additionally denied Lovelady's motion (#4) for a preliminary injunction, on the ground that the requested injunction to require defendants Beamer and Garton to provide him with appropriate medical care would not be effective because Lovelady was not, as of May 17, 2017, housed at EOCI where Beamer and Garton were employed.[1]

Now before the court are Lovelady's motion (#73) for reconsideration of my disposition of his motion for a preliminary injunction, Beamer's and Garton's motion (#74) for summary judgment as to Lovelady's remaining claims against them, and Lovelady's motion (#91) for imposition of sanctions against defendants and their attorneys pursuant to Federal Civil Procedure Rule 11 for purportedly knowingly submitting false evidence to the court. I have considered the motions and all of the pleadings and papers on file. For the reasons set forth below, Lovelady's (#73) motion for reconsideration is denied as moot, defendants' motion (#74) for summary judgment is granted, and Lovelady's motion (#91) for imposition of sanctions is

---

[1] As will be discussed below, the factual premise underlying my disposition of Lovelady's motion (#4) for a preliminary injunction was incorrect. As of May 17, 2017, Lovelady was housed at EOCI.

Page 2 - OPINION AND ORDER

denied.

## LEGAL STANDARDS

### I. Motion for Reconsideration

Federal Civil Procedure Rule 59(e) provides statutory authority for the district courts to consider a party's motion to alter or amend a judgment. *See* Fed. R. Civ. P. 59(e). Such a motion may appropriately be granted where "the district court (1) is presented with newly discovered evidence [or] (2) committed clear error or the initial decision was manifestly unjust, or (3) [where] there is an intervening change in controlling law." *Id.* at 1263. However, "[t]here may also be other, highly unusual, circumstances warranting reconsideration in addition to the foregoing." *Id.*

### II. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Page 3 - OPINION AND ORDER

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

### III. Motion for Imposition of Sanctions Pursuant to Federal Civil Procedure Rule 11

Federal Civil Procedure Rule 11(c)(1) provides that the federal courts may impose appropriate sanctions on any attorney or party who, "after notice and an opportunity to respond," violates any of the provisions of Federal Civil Procedure Rule 11(b). Fed. R. Civ. P. 11(c)(1). A party moving for sanctions under Federal Civil Procedure Rule 11(c) must serve the motion on the party against whom sanctions are sought, and then may file the motion with the court any time following 21 days after service if the allegedly noncompliant filing is not withdrawn or otherwise appropriately corrected within that period. *See* Fed. R. Civ. P. 11(c)(2). Any sanction imposed pursuant to Rule 11(c) "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Attorney fees may be awarded as a sanction under Rule 11(c) "if imposed on motion and warranted for effective deterrence," but must be limited to the fees and other expenses "directly resulting from the violation." *Id.* Rule 11(b) provides as follows:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or

Page 4 - OPINION AND ORDER

unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

The courts have discretion to award a party prevailing on a Rule 11(c) motion its reasonable expenses, including attorney fees, incurred in connection with the motion, where such an award would be "warranted." Fed. R. Civ. P. 11(c)(2). The burden of establishing that sanctions are justified is borne by the party moving for imposition of sanctions. *See Tom Growney Equip. v. Shelley Irrigation Dev.*, 834 F.2d 833, 837 (9th Cir. 1987).

### FACTUAL BACKGROUND

I previously had occasion, in my Opinion and Order (#71) dated May 17, 2017, to set forth all of the facts material to the parties' dispute. As the parties are familiar with those facts, and because the motions now before the court do not require consideration of all of the facts underlying the parties' dispute, I recite herein only those facts material to the motions now before the court.

Page 5 - OPINION AND ORDER

I.  **The Parties**

Plaintiff Lovelady is an incarcerated prisoner who at all material times was housed at the Eastern Oregon Correctional Institution. Between June 28, 2016, and January 24, 2017, Lovelady was housed at the Oregon State Penitentiary. Lovelady returned to EOCI on January 24, 2017, and has been housed there continuously since that date.

Defendant Beamer is a physician employed by EOCI. Beamer provided medical care to Lovelady during the material period from October 2014 through June 2016. It is Lovelady's position that Beamer was negligent in connection with his provision of medical care to Lovelady in the course of his employment as an EOCI physician. Lovelady's negligence claim is premised in its entirety on that purported negligence.

Defendant Garton is the outside medical coordinator at EOCI. It is Lovelady's position that, out of deliberate indifference to Lovelady's serious medical needs, Gardner falsified Lovelady's medical records to create the appearance that a March 6, 2015, MRI study of Lovelady's cervical spine was sent to outside medical provider Kadlec Neuroscience ("Kadlec") on or around March 31, 2015, when in fact the MRI study was not forwarded to Kadlec until September 11, 2015, causing delay in Lovelady's receipt of necessary medical care. Lovelady's Eighth Amendment claim against Garton is premised in its entirety on Garton's purported conduct in so falsifying Lovelady's medical records.

II. **Facts Material to the Motions Now Before the Court[2]**

Defendants proffer the testimony of defendant Garton that Lovelady underwent an MRI

---

[2] Except where otherwise indicated, the following recitation constitutes my construal of the evidentiary record in light of the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Page 6 - OPINION AND ORDER

study of his cervical spine on March 6, 2015. *See* Declaration (#75) of Jaylene Garton ("Garton Decl."), ¶ 4, Exh. 2 at 5. Garton further testifies that, on March 31, 2015, "Dr. Timothy Kelly ordered that the cervical MRI report be sent to Kadlec Neuroscience." *Id.*, ¶ 5. Garton further testifies that on that same date, March 31, 2015, she "sent the MRI report to Kadlec using an electronic transfer 'push' which also sent the MRI images to Kadlec," and that the electronic transfer method was used in order to effect the immediate transfer of the MRI study to the physicians as Kadlec. *Id.* Garton further testifies that, also on that same date, she made a notation in Lovelady's medical records as follows: "had [Saint Anthony's Hospital] push over c-spine MRI to Kadlec Neuroscience and they will fax over report for Dr. Baldwin to review." *Id.*

Garton further testifies that on April 5, 2015, EOCI medical staff responded to an inmate communication from Lovelady asking about the status of his MRI study, indicating that the study had been sent to Kadlec on March 31, 2015, and that EOCI medical staff were awaiting a reply from Kadlec. *See id.*, ¶ 6, Exh. 2 at 6. Garton further testifies that on April 6, 2015, EOCI medical staff responded to an inmate grievance filed by Lovelady indicating that EOCI medical staff were awaiting recommendations from Kadlec following Kadlec's review of Lovelady's MRI report. *See id.*, ¶ 7, Exh. 3.

Garton further testifies that she spoke with Kadlec staff on May 5, 2015, who advised her that the Kadlec neurologist's sole recommendation following review of Lovelady's MRI was physical therapy. *See id.*, ¶¶ 8-9. Garton further testifies that, on May 7, 2015, she relayed the recommendation to EOCI physician Timothy Kelly, and that Kelly wrote an order for Lovelady to undergo physical therapy. *See id.*, ¶ 9, Exh. 2 at 1. Garton further testifies that, also on May 7, 2015, she recorded her conversation with Kadlec staff, including a description of Kadlec's

Page 7 - OPINION AND ORDER

recommendations, in Lovelady's medical records. *See id.*,

¶ 9, Exh. 2 at 3.

Garton further testifies that she dis not falsify or improperly alter any of Lovelady's EOCI medical records. *See id.*, ¶ 10.

Lovelady proffers evidence in purported support of the proposition that, notwithstanding Garton's sworn testimony, his MRI study of March 6, 2015, was not sent to Kadlec until September 11, 2015. First, Lovelady proffers his own testimony that Garton's chart note of May 7, 2015, purporting to describe Kadlec's recommendations following review of the MRI study of March 6, 2015, was a falsification in that "Kadlec never received the MRI . . . for another four months after" the date Garton added the chart note. Declaration (#92) of Jeremy Ray Lovelady ("Lovelady Decl."), ¶¶ 9-10. Second, Lovelady notes that Kadlec's records indicate that on September 11, 2015, Kadlec "[r]eceived updated referral chart notes for [Lovelady] to followup on care." Complaint, Exh. 33.

## ANALYSIS

Following award of summary judgment in defendants' favor on May 17, 2017, as to Lovelady's Eighth Amendment claims against defendants Beamer and Wettlaufer, Lovelady proceeds in this action with his Eighth Amendment claim against defendant Garton and his Oregon common-law negligence claim against Beamer. Beamer and Garton now move for summary adjudication of those remaining claims.

Lovelady opposes defendants' motion for summary judgment in its entirety. In addition, Lovelady moves for imposition of sanctions against defendants and their counsel for their reliance on evidence purportedly fabricated by Garton in support of their motion for summary

Page 8 - OPINION AND ORDER

judgment. Finally, Lovelady moves for reconsideration of my disposition of his motion (#4) for a preliminary injunction of May 17, 2017.

I. **Defendants' Motion (#74) for Summary Judgment**

   A. **Lovelady's Eighth Amendment Claim against Garton**

As noted above, Lovelady's Eighth Amendment claim against Garton is premised solely on Garton's purported conduct in falsifying Lovelady's medical records to create the appearance that Lovelady's MRI study of March 6, 2015, was sent to Kadlec as of March 31, 2015, whereas in fact it was not sent to Kadlec until September 11, 2015. Also as noted above, both sets of parties have submitted evidence that they assert is material to the question whether the chart note Garton added to Lovelady's medical records on May 7, 2015, indicating that Kadlec had made medical recommendations based on review of Lovelady's MRI study as of May 5, 2017, was or was not fabricated.

Notwithstanding the foregoing, Lovelady has not offered evidence with any tendency to establish that the chart note of May 7, 2015, was fabricated or otherwise contained any misrepresentation of fact. First, while Lovelady expressly testifies both that he "has submitted documents proving that the defendant[]s have falsified the plaintiff's institutional progress notes," Lovelady Decl., ¶ 5, and that Garton "altered" his medical records by falsely stating that Kadlec had made medical recommendations based on review of Lovelady's MRI study as of May 5, 2017, *id.*, ¶¶ 6-7, nothing in his testimony or elsewhere in the record suggests that Lovelady had personal knowledge of the events to which he testifies, or explains how he could have learned that Garton's note of May 7, 2015, was inaccurate. As such, this court may properly disregard Lovelady's testimony to the extent it describes events beyond his personal knowledge without

Page 9 - OPINION AND ORDER

indication of how he learned that they occurred. *See, e.g., SEC v. Phan*, 500 F.3d 895, 909-910 (9th Cir. 2007), *quoting Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059, 1059 n. 5 (9th Cir. 2002). Moreover (as discussed below in connection with the single document Lovelady identifies with particularity as having material probative value), none of the documents Lovelady has submitted have any tendency to "prov[e]" that Garton's chart note was in any degree inaccurate.

Second, the Kadlec record indicating that on September 11, 2015, Kadlec received Lovelady's "updated referral chart notes" lacks any tendency to support the conclusion that Kadlec additionally received a copy of Lovelady's MRI study on that same date. To the contrary, the fact that Kadlec recorded receipt of updated chart notes without recording receipt of the MRI study strongly supports the contrary conclusion that Kadlec did not receive the MRI study on that date.

By contrast, defendants have proffered competent evidence, described above, tending to establish that Garton's chart note of May 7, 2015, was accurate. *See* Garton Decl., ¶¶ 5-10. Had Lovelady submitted competent evidence probative of his position, this court would be required to resolve the conflict between his proffered evidence and defendants' in his favor for purposes of determining the merits of defendants' pending motion (#74) for summary judgment. In the absence of any evidence probative of Lovelady's position, however, the evidence of record unambiguously indicates that Garton did not falsify the chart note of May 7, 2015. In consequence, I cannot find on the evidence of record that Garton's complained-of conduct could have caused the complained-of delay in Garton's receipt of medical care, and no grounds exist for holding Garton liable under Section 1983 for the violation of Lovelady's Eighth Amendment

Page 10 - OPINION AND ORDER

rights. Defendants' motion (#74) for summary judgment is therefore granted as to Lovelady's Eighth Amendment claim against defendant Garton.

**B.      Lovelady's Negligence Claim against Beamer**

Lovelady alleges Beamer's liability under Oregon common law for negligence in connection with Beamer's provision of medical services to Lovelady while Lovelady was incarcerated at EOCI. Defendants are entitled to summary judgment in their favor as to this claim, because under the Oregon Tort Claims Act (the "OTCA"), the State of Oregon must be substituted for Beamer as the defendant in connection with Lovelady's negligence claim, and under the Eleventh Amendment the State of Oregon is immune from suit in federal court in connection with such claims.

The OTCA provides, in relevant part, as follows:

(1)     Subject to the limitations of ORS 30.260 to 30.300 [*i.e.*, the OTCA], **every public body is subject to civil action for its torts and those of its officers, employees and agents acting within the scope of their employment or duties**, whether arising out of a governmental or proprietary function or while operating a motor vehicle in a ridesharing arrangement authorized under ORS 276.598.

(2)     **The sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action under [the OTCA].** The remedy provided by ORS 30.260 to 30.300 is exclusive of any other action against any such officer, employee or agent of a public body whose act or omission within the scope of the officer's, employee's or agent's employment or duties gives rise to the action. No other form of civil action is permitted.

(3)     **If an action under ORS 30.260 to 30.300 alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the sole cause of action for a tort committed by officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 is an action against the**

Page 11 - OPINION AND ORDER

> public body. **If an action is filed against an officer, employee or agent of a public body, and the plaintiff alleges damages in an amount equal to or less than the damages allowed under ORS 30.271, 30.272 or 30.273, the court upon motion shall substitute the public body as the defendant.** Substitution of the public body as the defendant does not exempt the public body from making any report required under ORS 742.400.
>
> (4) If an action under ORS 30.260 to 30.300 alleges damages in an amount greater than the damages allowed under ORS 30.271, 30.272 or 30.273, the action may be brought and maintained against an officer, employee or agent of a public body, whether or not the public body is also named as a defendant. An action brought under this subsection is subject to the limitations on damages imposed under ORS 30.271, 30.272 or 30.273, and the total combined amount recovered in the action may not exceed those limitations for a single accident or occurrence without regard to the number or types of defendants named in the action.

Or. Rev. Stat. § 30.265(1)-(4) (emphasis supplied). Here, although Lovelady brings his claim against Beamer in both his official and his individual capacities, the evidence of record tends to establish that at all material times Beamer was acting, negligently or otherwise, within the course and scope of his employment for EOCI and the Oregon Department of Corrections, and no evidence of record or any allegation of Lovelady's complaint suggests to the contrary. In addition, it is clear that Lovelady has not alleged damages in excess of those allowed under Or. Rev. Stat. §§ 30.271-30.273. *See* Complaint at 18-19. It follows that, under the OTCA, the only appropriate defendant in connection with Lovelady's negligence claim is the public body by which Beamer was at all material times employed. *See* Or. Rev. Stat. § 30.265(1)-(4). ODOC must therefore be substituted for Beamer as the defendant in connection with Lovelady's negligence claim.

ODOC, as an arm of the State of Oregon, enjoys Eleventh Amendment immunity from suit in federal court (although not in state court) in connection with Lovelady's negligence claim.

The Eleventh Amendment (as construed in applicable Supreme Court jurisprudence) bars citizens from bringing suit against a state of the United States in any federal court unless the immunity it provides is either abrogated by Congress or expressly waived by the state. *See, e.g., Seminole Tribe of Florida v. Florida* 517 U.S. 44, 54-56 (1996). While the State of Oregon has expressly waived its sovereign immunity in connection with tort claims brought in state court by and though the OTCA, *see* Or. Rev. Stat. 30.265(1), it is clear that the OTCA contains no express waiver of Eleventh Amendment immunity from suit in federal court, *see id.*, and, further, that waiver of sovereign immunity which does not include express waiver of Eleventh Amendment immunity is not effective to waive Eleventh Amendment immunity from suit in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n. 9 (1984) (a state's general waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment immunity to suit in federal court); *Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) ("The [OTCA] is a waiver of sovereign immunity but does not waive Eleventh Amendment immunity. Thus, suits by private parties against the state must be brought in state court."). There is no argument or evidence to suggest that the State of Oregon has otherwise waived Eleventh Amendment immunity for purposes of negligence claims such as Lovelady's, or that Congress could have abrogated Eleventh Amendment immunity for such claims. It follows that neither ODOC nor any of its employees is subject to suit in this court in connection with Lovelady's negligence claim (although Lovelady would not be barred by Eleventh Amendment immunity from pursuing such a claim in state court). In consequence, defendants' motion (#74) for summary judgment is granted as to Lovelady's negligence claim against Beamer.

## II. Lovelady's Motion (#91) for Imposition of Sanctions

As noted above, Lovelady's motion (#91) for imposition of sanctions is premised entirely on defendants' reliance on evidence that Garton accurately recorded on May 7, 2015, that on May 5, 2015, Kadlec staff advised her that a Kadlec neurologist had recommended physical therapy for Lovelady following review of his MRI study of March 6, 2015. As discussed above, there is no support in the record for the proposition that defendants' reliance on that evidence was in any way misplaced or otherwise improper. As such, no grounds exist for imposing sanctions on defendants or their counsel.

Moreover, as noted above, Rule 11 provides that, when an attorney signs, files, or advocates a legal memorandum, that attorney certifies that the arguments contained therein are not presented for any improper purpose, that those legal arguments are nonfrivolous, and that factual contentions contained therein are supported by available evidence. *See* Fed. R. Civ. P. 11(b). Rule 11(c) requires that a party moving for sanctions under Rule 11 serve the motion on the party against whom sanctions are sought, and then provide that party 21 days following service of the motion within which to correct the putatively sanctionable filing before filing the motion with the court. *See* Fed. R. Civ. P. 11(c)(2). In *Barber v. Miller*, 146 F.3d 707 (9th Cir. 1998), the Ninth Circuit quoted the Advisory Committee Notes to the amendments that created these procedural requirements as follows:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.
Page 14 - OPINION AND ORDER

*Barber*, 146 F.3d at 710, *quoting* Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993 Amend. Moreover, the Ninth Circuit further quoted the Advisory Committee Notes in support of the conclusion that only formal service of the motion that the moving party intends to file with the court in the event the putatively sanctionable filing is not withdrawn may trigger the beginning of the 21-day period:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

*Id., quoting* Fed. R. Civ. P. 11; Adv. Comm. Notes, 1993 Amend. As the *Barber* court concluded, "[i]t would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion." *Id.* It follows that this court is without authority to impose sanctions pursuant to Rule 11(c) absent the moving party's full compliance with the "safe harbor" provisions of the rule. *See, e.g., Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 788-789 (9th Cir. 2001) (reversible error for a district court to award sanctions pursuant to Rule 11(c) on a party's motion that was not strictly compliant with the procedural requirements of the rule). Because Lovelady did not serve defendants with his motion at least 21 days prior to filing it with the court, even if he had accurately identified sanctionable conduct on the part of any defendant or of defendants' counsel his sanctions motion would necessarily be denied as procedurally noncompliant. *See id.*

For all of the foregoing reasons, Lovelady's motion (#91) for imposition of sanctions is denied.

## III. Lovelady's Motion (#73) for Reconsideration

As noted above, on May 17, 2017, I denied Lovelady's motion (#4) for a preliminary injunction on the ground that the requested injunction would necessarily be ineffective, in that Lovelady was not at the time housed in an institution where Beamer or Garton were employed, such that even if enjoined to provide him with adequate medical care they would be unable to do so. Lovelady correctly notes that the factual premise underlying my disposition was incorrect, and that, in fact, at the time my order issued, he was housed at EOCI, where both Beamer and Garton were employed.

Notwithstanding the foregoing, because it is established that Lovelady has no valid claim over which this court may properly exercise jurisdiction against any named defendant herein, no grounds exist for granting Lovelady's motion for a preliminary injunction. This is because the purpose of preliminary injunctive relief is to either preserve the *status quo* or to prevent irreparable injury pending resolution of an underlying cause of action, and the federal courts lack authority to issue injunctions addressing matters outside the scope of pending claims. *See, e.g., Sierra On-line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). This court therefore lacks authority to grant Lovelady's motion (#4) for a preliminary injunction. It follows that Lovelady's motion (#73) for reconsideration of my disposition of that motion is moot following resolution of defendants' motion (#74) for summary judgment in defendants' favor. Lovelady's motion (#73) for reconsideration is therefore denied as moot.

## CONCLUSION

For the reasons set forth above, Lovelady's motion (#73) for reconsideration is denied as

moot, defendants' motion (#74) for summary judgment is granted in its entirety, and Lovelady's motion (#91) for imposition of sanctions is denied. A final judgment will be prepared.

Dated this 19th day of October, 2017.

*Paul Papak*
Honorable Paul Papak
United States Magistrate Judge